**Dale SCHAPER, Plaintiff-Appellee,**

v.

**CITY OF HUNTSVILLE, et al., Defendants,**

**Gene Pipes and Hank Eckhardt, Defendants-Appellants.**

No. 86–2377.

United States Court of Appeals, Fifth Circuit.

April 6, 1987.

Rehearing and Rehearing En Banc Denied May 6, 1987.

---

**15.** *See Thompson v. Chrysler Motors Corp.,* 755 F.2d 1162, 1174 (5th Cir.1985); *Covington v.* *Cole,* 528 F.2d 1365, 1373 n. 19 (5th Cir.1976).

James T. McCartt, Susman, Godfrey & McGowan, Houston, Tex., L. Scott Bounds, City Atty., Hunstville, Tex., for defendants-appellants.

Douglas M. Becker, Gray & Becker, Austin, Tex., for plaintiff-appellee.

Before REAVLEY and RANDALL, Circuit Judges, and MAHON *, District Judge.

REAVLEY, Circuit Judge:

Appellee Dale Schaper brought this Section 1983 action, claiming procedural and substantive due process violations arising out of his termination as captain of the Huntsville Police Department. Defendants-Appellants Hank Eckhardt and Gene Pipes, Huntsville's chief of police and city manager, respectively, answered Schaper's complaint claiming immunity from suit. Also, defendant City of Huntsville answered denying Schaper's claims. All of the defendants subsequently filed motions for summary judgment. The district court denied their motions, and defendants-appellants Eckhardt and Pipes now appeal from the court's order. We reverse.

I

Appellee Dale Schaper was hired by the City of Huntsville Police Department in February, 1981, as captain, and second in command to the chief of police, David Farrar. For three years Schaper received exemplary evaluations for his job performance. In September, 1984, however, Schaper was indicted for falsifying car title documents, and subsequently was suspended from duty without pay. Schaper claimed to be innocent of any knowing wrongdoing. However, Schaper pleaded *nolo contendere* to the charges, because, he claims, Gene Pipes, the city manager,

* District Judge of the Northern District of Texas, sitting by designation.

promised that he would be reinstated and could reasonably expect continued employment if he so pleaded. In the meantime, Chief Farrar was indicted for felony theft, arising out of the same set of events, and resigned from the force.

Before being reinstated, Schaper met with Pipes to discuss his future with the Huntsville Police Department. Pipes instructed Schaper to perform three tasks upon his return: (1) formulate a crime stoppers program; (2) submit an evidence policy for the department; and (3) achieve greater regularity and orderliness in the way evidence is handled by the department. Appellants claim that Schaper's failure to complete the third task, as well as assorted other problems with his performance, provided the grounds for Schaper's later dismissal.

Schaper claims that his dismissal was arbitrary and capricious and motivated by "political" concerns, because Pipes had been subjected to intense political pressure ever since his decision to reinstate Schaper. Schaper asserts that during several interviews with applicants for the vacant chief of police position, Pipes stated or implied that the first order of business was to find reasons to terminate Schaper. On March 14, 1985, Hank Eckhardt became the new chief of police, and, according to Schaper, joined Pipes in a conspiracy to remove him from the captaincy. Appellants deny that any such conspiracy was discussed or that any such agreement was made.

On April 29, 1985, Eckhardt gave Schaper a memorandum explaining that he intended to discharge him, and gave him four days to respond orally or in writing, with or without counsel. The memorandum set forth several grounds for the decision, including Schaper's indictment for falsifying the car title documents, alleged violations of policies concerning evidence and confiscated property, alleged violations of weapons policies, and, in general, his failure to remedy his inadequate performance and that of the personnel under his supervision. Schaper responded to the memorandum, in writing, on May 3, 1985, addressing each of the points Eckhardt had made. Eckhardt read the response, but adhered to his original decision.

Schaper appealed Eckhardt's decision to Huntsville's city manager, Gene Pipes, pursuant to the personnel policies enacted by the City Council.[1] Pipes stayed Eckhardt's decision, and suspended Schaper with pay pending the outcome of the appeal. As city manager, Pipes presided over the hearing concerning Schaper's discharge. The hearing lasted four days, and included approximately 25 hours of sworn testimony. At the conclusion of the hearing, Pipes issued a written order upholding Schaper's termination.

Schaper filed an appeal with the Huntsville City Council as provided by Huntsville's City Charter,[2] and Huntsville's Personnel Policies.[3] Apparently, however, there were some scheduling problems, and Schaper's attorney could not attend on the scheduled date. The City Council affirmed Pipes' decision after Schaper and his attorney failed to appear. Schaper filed this Section 1983 suit soon after filing the appeal with the City Council. Pipes and Eck-

1. Chapter 10, section 8(c), of Huntsville's Personnel Policies, as adopted by the City Council, provides as follows:

Upon request, an employee against whom disciplinary action is taken shall be entitled to present a written response to said action and to appear personally before the City Manager, with or without counsel. All parties shall have the opportunity to present and cross examine witnesses who appear. The City Manager, following careful investigation, shall have broad authority to approve, disapprove, modify, increase, or rescind any disciplinary actions taken or proposed. The City Manager shall render a final written decision within ten (10) days.

2. Section 4.13 of Chapter 10 of Huntsville's City Charter provides as follows:

After proper appeal to the City Manager, all City employees, other than those employees appointed by Mayor or Council, may appeal in writing to Council to hear and resolve grievances of personnel matters as they relate to disciplinary actions resulting in a suspension without pay for five working days or more or resulting in termination.

3. The provision for appeal to the City Council under the Personnel Policies is substantially the same as under the City Charter. See footnote 2, supra.

hardt responded with claims of qualified immunity, and moved for summary judgment. The district court denied their motions, and this interlocutory appeal followed.

## II

**Jurisdiction to Hear This Appeal**

■ Initially, we must consider Schaper's argument that this court does not have jurisdiction to hear this appeal. Ordinarily, a district court's denial of a motion for summary judgment is not appealable, and an appellate court is without jurisdiction, because it is not a "final decision" under 28 U.S.C. § 1291. However, in *Mitchell v. Forsyth,* 472 U.S. 511, 528, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985), the Court held that the collateral order doctrine of *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), is satisfied and "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." The reason for this exception is that qualified immunity is an *immunity from suit,* which includes protection from the burdens of broad-reaching discovery. *Id.* at 524, 105 S.Ct. at 2815. To not allow an appeal from a district court's denial of a claim of immunity would effectively defeat the immunity entitlement. *See Jacquez v. Procunier,* 801 F.2d 789 (5th Cir.1986).

■ As the *Mitchell* Court explained, an appellate court must consider

whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions or, in cases where the district court has denied summary judgment for the defendant on the ground that even under the defendant's version of the facts the defendant's conduct violated clearly established law, whether the law clearly proscribed the actions the defendant claims he took.

*Id.* at 528, 105 S.Ct. at 2816. Appellate review in these cases, although limited to questions of law, necessarily "entail[s] consideration of the factual allegations that make up the plaintiff's claim for relief." *Id.* at 528, 105 S.Ct. at 2817. Therefore, "jurisdiction" over an appeal from a denial of a claim of immunity cannot be settled until the disputed facts, as well as the facts not in dispute, are reviewed to determine whether they state a claim upon which relief may be granted.

■ The lower court in this case failed to state its reasons for denying the defendants' claims of immunity. Although not technically a "final judgment" under 28 U.S.C. § 1291, the denial of a claim of immunity, as noted above, is a "final decision," because of its conclusive effect on the defendant's claimed right to be free from the burdens of discovery. *Mitchell,* 472 U.S. at 524, 105 S.Ct. at 2815. Hence, district courts should state for the record, and for the benefit of the circuit court on appeal, their reasons for denying immunity. *See* Fed.R.Civ.P. 41(b), 52(a). Of course, implicit in the district court's judgment here is the finding that there remain disputed questions of material fact that, if true, would constitute violations of clearly established law by these defendants.

## III

**Procedural Due Process**

■ Schaper's due process claim depends upon his having a property interest in continued employment. *Bishop v. Wood,* 426 U.S. 341, 343–47, 96 S.Ct. 2074, 2076–79, 48 L.Ed.2d 684 (1976); *Board of Regents v. Roth,* 408 U.S. 564, 576–78, 92 S.Ct. 2701, 2708–09, 33 L.Ed.2d 548 (1972). The Constitution does not create property interests; "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id.* at 577, 92 S.Ct. at 2709. In the present case, Schaper derives a property interest from the Personnel Policies enacted by the Huntsville City Council which allow for dismissal

only for "just cause."[4] *See Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985). Once a state has conferred a property right, it cannot constitutionally deprive such an interest without appropriate procedural safeguards. *Id.*

It should be emphasized that the claim before us is limited to a pretermination due process denial. Schaper contends that the procedural safeguards and the substantive makeup of the hearings provided by Eckhardt and Pipes *prior to termination* were constitutionally inadequate and violated clearly established law. In his brief, Schaper also alludes to procedural and substantive due process violations he believes took place at the postdeprivation stage; specifically, his allegation that the Huntsville City Council illegally deprived him of a hearing. But the Huntsville City Council, although still a defendant in this suit, is not before us on appeal. This case is on appeal from the trial court's denial of Eckhardt's and Pipes' claims of immunity. Therefore, our only concern is whether Eckhardt and Pipes provided Schaper with due process *prior* to his dismissal from the Huntsville Police Department.

### A. The Process

In general, pretermination "hearings" need not be elaborate. In *Loudermill,* the Court explained that

[t]he essential requirements of due process ... are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement. The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.

105 S.Ct. at 1495 (citations omitted).

Schaper's dismissal from the Huntsville Police Department was accompanied by much more process than simply notice and an opportunity to respond. When Eckhardt informed Schaper of the proposed termination, he gave Schaper a list of reasons for the decision, as well as an opportunity to object to the decision. This alone was probably sufficient to satisfy due process. However, before Schaper was discharged from the force,[5] he received a hearing, at which witnesses testified and counsel was present.

### B. Bias

Schaper contends, however, that these hearings were meaningless, since Pipes and Eckhardt, the targets of his conspiracy allegation, presided over them. In *Holloway v. Walker,* 784 F.2d 1287 (5th Cir.1986), this court considered an argument very similar to Schaper's conspiracy allegation. Holloway had alleged that he had been

---

4. Section 1 of Chapter 10 of the City of Huntsville's Personnel Policies establishes the grounds for disciplinary action.

Disciplinary action may be taken against an employee for just cause. Just cause shall be related to the job involved and shall include but not be limited to illegal, unethical, abusive, or unsafe acts; violation of City rules, regulations, policies, or procedures; insubordination; inefficiency; neglect or abandonment of duties; participation in prohibited political activity or solicitations; abuse of illness, injury, disability, or other benefits; tardiness or absence without leave; falsification of official documents or records; using or being under the influence of drugs or intoxicating beverages while on duty; waste, damage, or unauthorized use of City property or supplies; unauthorized use or disclosure of official information; and unauthorized or improper use of official authority; violation of

the provisions of the City Charter; discourtesy to the public or to fellow employees; refusal or neglect to pay just debts. Nothing herein shall, however, limit the authority of City Council to remove officers appointed by Council.

5. Schaper remained on the Huntsville Police Department's payroll pending the outcome of the appeal to Pipes. Even though the elaborate hearing before Pipes in many ways resembled a postdeprivation hearing, it took place *prior* to any deprivation. *See Loudermill,* 105 S.Ct. at 1495 ("[I]n those situations where the employer perceives a significant hazard in keeping the employee on the job, it can avoid the problem by suspending with pay."). Therefore, both the Eckhardt hearing and the Pipes hearing are evaluated herein according to due process standards for pretermination hearings.

deprived of a fair trial as a result of a conspiracy between the presiding judge and the opposing litigants. Like Schaper, Holloway considered the bias of the decisionmaker at the predeprivation hearing a violation of due process. However, relying on the holdings in *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) and *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), we rejected Holloway's due process claim.

In *Parratt,* a prisoner was negligently deprived of property when prison officials lost a hobby kit that the inmate had ordered through the mail. The Court held that a predeprivation hearing was not feasible under the circumstances since the deprivation was a result of random and unauthorized conduct. 451 U.S. at 541, 101 S.Ct. at 1916. Because state law provided a postdeprivation damage remedy, the Court ruled that the deprivation did not violate procedural due process. State tort law provided all the process that was due. *Id.* at 541–44, 101 S.Ct. at 1916–17. In *Hudson,* the *Parratt* holding was extended to intentional deprivations of property.[6] 468 U.S. at 531, 104 S.Ct. at 3203.

■ This circuit's application of *Parratt* and *Hudson* to the facts in *Holloway* forecloses Schaper's procedural due process claim. *See also Collins v. King,* 743 F.2d

248, 254 (5th Cir.1984) (court held that a prisoner's complaint that a member of a disciplinary tribunal was biased against him did not state a due process claim); *but see Bretz v. Kelman,* 773 F.2d 1026, 1031–32 (9th Cir.1985) (en banc) (Ninth Circuit refused to apply *Parratt* in conspiracy cases, because a "conspiracy ... is, by its very definition, not random behavior"). In *Holloway,* we held that the alleged conspiracy between the presiding judge and opposing litigants was a "random unauthorized act" for which the state provided the postdeprivation remedy of appeal. 784 F.2d at 1291–93. In so holding, we rejected the plaintiff's claim that the tainted proceeding represented "an established state procedure." *See Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 435–36, 102 S.Ct. 1148, 1158, 71 L.Ed.2d 265 (1982) (*Parratt* applies only when deprivation results from a random and unauthorized act, not when it results from "an established state procedure"). Here, the "conspiracy," if true, obviously would have infected the pretermination hearings with bias. However, the state cannot be expected to anticipate such unauthorized and corrupt conduct. Nor does due process require the state to provide an impartial decisionmaker at the pretermination hearing.[7] The state is obligated only to make available "the means by

---

**6.** *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986), overruled *Parratt*'s holding that negligence alone could state a cause of action under the Due Process Clause. The Court stated that "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty or property."

**7.** The wisdom of a constitutional requirement of an impartial decisionmaker at the pretermination stage was debated, but not decided, in *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). Justice White, concurring in part and dissenting in part, argued that in some cases due process requires an impartial decisionmaker. He explained:

> Fairness and accuracy are not always threatened simply because the hearing examiner is the supervisor of an employee.... But here the hearing official was the object of slander that was the basis for the employee's proposed discharge. In ruling that the employee was to be terminated, the hearing examiner's own reputation ... was at stake.

416 U.S. at 199, 94 S.Ct. at 1666 (citation omitted).

Schaper's claim presents a situation similar to the one addressed by Justice White, since Eckhardt and Pipes obviously could not have been impartial if they conspired to remove Schaper from the force. But Chief Justice Burger, and Justices Rehnquist and Stewart, in the *Arnett* plurality, and Justices Powell and Blackmun, concurring, argued that due process does not require an impartial hearing officer at the pretermination stage. Justice Powell, for example, argued that significant practical considerations inveighed against such a requirement:

> In most cases, the employee's supervisor is the official best informed about the "cause" for termination. If disqualification is required on the ground that the responsible supervisor could not be wholly impartial, the removal procedure would become increasingly complex. In effect, a "mini-trial" would be necessary to educate the impartial decisionmaker as to the basis for termination.

416 U.S. at 170 n. 5, 94 S.Ct. at 1652 n. 5.

which [Schaper] can receive redress for the deprivations." *Parratt*, 451 U.S. at 543, 101 S.Ct. at 1917.

 Although Schaper's claim alleges a deprivation of a property right, the character and magnitude of Schaper's employment interest differs significantly from *Parratt's* concern with a hobby kit. The requisite procedural safeguards mandated by the Due Process Clause depend upon a balancing of the competing interests at stake. *Mathews v. Eldridge*, 424 U.S. 319, 334–35, 96 S.Ct. 893, 902–03, 47 L.Ed.2d 18 (1976). Elaborate pretermination proceedings are not mandated here because of the excessive burden they would put "on the government's interest in quickly removing an unsatisfactory employee." *Loudermill*, 105 S.Ct. at 1495–96. But in the event of minimal pretermination safeguards, the substantial private interest one has in not being deprived of his livelihood requires a full hearing after termination. *Id.* at 1496. Moreover, the Due Process Clause requires the post-termination hearing to be held "at a meaningful time." *Id.* at 1496; *see, e.g., Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). "At some point, a delay in the post-termination hearing would become a constitutional violation." *Loudermill*, 105 S.Ct. at 1496; *see Barry v. Barchi*, 443 U.S. 55, 66, 99 S.Ct. 2642, 2650, 61 L.Ed.2d 365 (1979).

 Our decision that there is no procedural due process violation in this case is facilitated by the Huntsville City Charter's provision granting the right to appeal the city manager's termination decision to the Huntsville City Council. Indeed, Schaper does not claim that post-termination hearings do not exist as a general matter, only that the Huntsville City Council failed to provide him one. Nor does Schaper allege that Pipes and Eckhardt conspired with the City Council to deny him a post-termination hearing. Thus, any section 1983 liability of the appellants rests solely on their conduct at the pretermination stage. We conclude, as a matter of law, that Schaper's allegations of bias and conspiracy do not state a procedural due process claim.

## IV

### Substantive Due Process

This case also raises questions of substantive due process, an area of the law famous for its controversy, and not known for its simplicity. First, we are confronted with the question whether a public employee has *any* "substantive" due process right by virtue of his state property interest in continued employment. Second, if Schaper does have a substantive due process right in continued employment, can he claim a violation of that right at the pretermination stage?

Appellants argue first that Schaper has no "substantive" due process right, *at all*, in his continued employment. Appellants rely on the argument forwarded by Justice Powell in his concurring opinion in *Regents of the University of Michigan v. Ewing*, 474 U.S. 214, 106 S.Ct. 507, 515, 88 L.Ed.2d 523 (1985) (emphasis added):

> While property interests are protected by procedural due process even though the interest is derived from state law rather than the Constitution, *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), *substantive due process rights are created only by the Constitution.*

In *Ewing*, a student brought suit after he had been expelled from a special six-year combined undergraduate and medical school program at the University of Michigan. The plaintiff in *Ewing* did not complain of procedural errors, but alleged that his expulsion was arbitrary and capricious. The Court reviewed the University's decision, and found no substantive due process violation. In reaching the merits of the claim, however, the majority "*assume[d]* the existence of a constitutionally protectible property right in [the student's] continued enrollment." 106 S.Ct. at 512. The Court implied, therefore, that substantive due process rights *may* be created the same way procedural due process rights are created, by state law. *See also Harrah Independent School District v. Mar-*

*tin,* 440 U.S. 194, 198–99, 99 S.Ct. 1062, 1064, 59 L.Ed.2d 248 (1979).

In *Russell v. Harrison,* 736 F.2d 283, 288 (5th Cir.1984), this court found that a complaint alleging an arbitrary and capricious deprivation of a property interest states a cause of action under the Due Process Clause. Other circuits, however, have disagreed about the availability of substantive due process review when plaintiffs allege deprivations of state conferred property rights.[8] Following the law of this circuit, we hold that Schaper has a substantive due process right in continued employment. We must next consider, therefore, whether an allegation of arbitrary state action at the predeprivation stage states a cause of action under the Due Process Clause.

As discussed in the previous section, the Court held in *Parratt* and in *Hudson v. Palmer* that a deprivation resulting from a "random and unauthorized act" of a state official does not violate procedural due process when state law provides an adequate postdeprivation remedy. In the procedural due process context the logic of this rule is manifest. When a deprivation results from random and unauthorized conduct that is not amenable to any predeprivation check, what process is due cannot be assessed until available state postdeprivation remedies have been exhausted. However, while applicable to procedural due process claims, the *Parratt/Hudson* rule does not necessarily apply in the substantive due process context.

In *Augustine v. Doe,* 740 F.2d 322 (5th Cir.1984), this court refused to extend *Parratt's* exhaustion of state remedies requirement to a substantive due process claim premised on a violation of the Fourth Amendment. Judge Wisdom explained why:

> The State does not violate procedural due process by failing to provide a procedure it cannot practically provide. In contrast, when a plaintiff alleges that state action has violated an independent substantive right, he asserts that the action itself is unconstitutional. If so, his rights are violated no matter what process precedes, accompanies, or follows the unconstitutional action. The availability of notice and a hearing is therefore irrelevant; *Parratt's* concern with the feasibility of predeprivation process has no place in this context.

*Id.* at 326–27.

Schaper's substantive due process claim alleges a very different kind of deprivation than the one stated in *Augustine.*

---

**8.** The Eleventh Circuit has expressly found that "the 'deprivation of a property interest for an improper motive and by means that [are] pretextual, arbitrary and capricious' constitutes a substantive due process violation." *Barrett v. Housing Authority,* 707 F.2d 1571, 1577 (11th Cir.1983) (quoting *Hearn v. City of Gainesville,* 688 F.2d 1328, 1332 (11th Cir.1982)). Similarly, the Eighth Circuit has reviewed deprivations of state conferred property rights for violations of substantive due process. *Moore v. Warwick Public School District No. 29,* 794 F.2d 322, 328–29 (8th Cir.1986); *O'Neal v. City of Hot Springs National Park,* 756 F.2d 61, 63 (8th Cir.1985). The Tenth Circuit, however, has specifically rejected substantive due process review when the deprived interest does not rise to constitutional dimensions. In *Mangels v. Pena,* 789 F.2d 836 (10th Cir.1986), the court stated that "[r]ights of substantive due process are founded not upon state provisions but upon deeply rooted notions of fundamental personal interests derived from the Constitution." *Id.* at 839 (citing *Regents of the University of Michigan v. Ewing,* 474 U.S. 214, 106 S.Ct. 507, 515–16, 88 L.Ed.2d 523 (1985) (Powell, J., concurring). The Tenth Cir-

cuit did not attempt to square its holding with the *Ewing* majority's assumption implying that a substantive due process right *might* exist by virtue of state law. Prior to *Ewing,* the Seventh Circuit also found state property rights to be protected *exclusively* by procedural due process. *Brown v. Brienen,* 722 F.2d 360, 367 (7th Cir. 1983). Judge Flaum, concurring, explained the reason for the court's decision: "The Supreme Court ... has analyzed the issue of deprivation of property as involving only procedural due process rights. *Id.* at 368 (citing *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982); *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)). However, the decision in *Ewing* would appear to undermine Judge Flaum's observation, as well as the *Brienen* holding. *See* Monaghan, *State Law Wrongs, State Law Remedies, and The Fourteenth Amendment,* 86 Colum.L.Rev. 979, 994 (1986) ("If ... *Ewing* holds that a plaintiff can *always* make a substantive due process challenge for arbitrariness, *Parratt* and *Hudson v. Palmer* are overruled completely.") (emphasis in original).

In *Augustine,* the defendants violated plaintiff's substantive right to be free from unreasonable searches and seizures, a right specifically enumerated in the Fourth Amendment of the Constitution. As Judge Wisdom emphasized, a deprivation of an individual's Fourth Amendment rights is itself a substantive violation, regardless of what procedures—predeprivation or postdeprivation—are available. The special nature of the interests involved renders the *Parratt/Hudson* rule inapplicable "to alleged violations of substantive rights incorporated into the fourteenth amendment." *O'Quinn v. Manuel,* 773 F.2d 605, 608 (5th Cir.1985). In contrast, the substantive right here comes not from the Constitution, but from state law: no *independent* substantive interest is at stake in this case.

Schaper's substantive due process claim, although advanced under a different rubric, really raises the same claim rejected in the previous section. *See Holloway v. Walker,* 784 F.2d 1287, 1293–94 (5th Cir. 1986). Indeed, allowing Schaper's claim would effectively eviscerate the holding of *Parratt. Id.* It would allow a plaintiff to challenge a deprivation of a property interest on the ground that it resulted from arbitrary and capricious state action, while, under *Parratt/Hudson,* he would not be able to state a claim for the deprivation of the same right on the ground that it resulted from a random and unauthorized act of a state official. This remarkable result clearly was not envisioned by the Court in *Parratt* or *Hudson.*[9] Schaper's substantive rights mirror his procedural rights, and under either theory he cannot allege a violation at the pretermination stage of the process.

We regard the availability of a prompt post-termination administrative hearing as a significant factor in rejecting Schaper's substantive claim.[10] In the previous section we discussed the bearing of the available post-termination hearing upon Scha-

per's procedural due process claim. In the same way, the availability of a post-termination hearing is an integral part of our conclusion that Schaper has not stated a substantive due process claim.

The district court's order denying appellants' motions for summary judgment is, therefore, REVERSED.

---

9. *See* Monaghan, *State Law Wrongs, State Law Remedies, and The Fourteenth Amendment,* 86 Colum.L.Rev. 979, 985 (1986).

10. Schaper also argues that appellants deprived him of liberty without due process, because "there was no meaningful post-termination

hearing and therefore no opportunity for a name-clearing-hearing." However, as noted above, the question whether the post-termination hearing was adequate is not before this court.