**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

**No. 98-30357**

**LEWANA SHEARER,**

**Plaintiff-Appellee,**

**VERSUS**

**KENNETH F. BOWEN,**

**Defendant-Appellant.**

Appeal from the United States District Court
For the Western District of Louisiana
(97-CV-265)

May 18, 2000

Before EMILIO M. GARZA, DeMOSS and STEWART, Circuit Judges.

PER CURIAM:[*]

Defendant Kenneth F. Bowen appeals the district court's denial

of his motion for summary judgment based on qualified immunity.

Because Plaintiff Lewana Shearer has failed to establish violations

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

of clearly established law, we vacate the judgment of the district court and remand for entry of judgment for Bowen on qualified immunity grounds.

**I.**

Shearer was a tenured civil servant employed by the City of Lafayette ["City"] as the division head of the Risk Management Division. Pursuant to that post, she had the responsibility of supervising and administering the City's Group Insurance Program, Nurse and Wellness Programs, Safety Program, and Property and Casualty Self Insurance Program. Prior to February 7, 1996, Shearer had never been reprimanded, demoted, terminated, or disciplined in her seventeen years of service to the City, and her evaluations and ratings had been either excellent or superior. On that date, however, Lafayette Police Detective Don Knetch came to Shearer's office and advised her that she was the subject of a criminal investigation for theft of City funds and malfeasance arising out of a complaint that she had placed Bowen, the City's mayor, under surveillance.

Later that same day, Chief Administrative Officer Mike Mouton[1] had Floyd Domingue, Shearer's supervisor, place Shearer on paid administrative leave pending an investigation of the operation of

---

[1]Shearer actually alleges that Bowen placed her on administrative leave. In essence, she appears to be asserting that Mouton's actions in this and other situations were committed under the direction of Bowen.

2

the Risk Management Division. She was ordered to remain at her residence during her normal working hours so that she could be reached for information pertinent to the investigation. But according to Shearer, no calls were ever made to her regarding the investigation. Instead, she contends that the City never called her but had marked police units hand deliver letters to her residence. Furthermore, she alleges that unmarked cars kept her under surveillance until she complained to the Sheriff's Office. During this time, she maintains that Bowen had another City employee alert the media as to her suspension due to theft of public funds.

The charges against Shearer were referred to the Lafayette Parish District Attorney's Office, which presented the charges to a grand jury. On March 27, 1996, the grand jury returned a no true bill, finding no probable cause to prosecute Shearer. Afterwards, Shearer requested that she be allowed to return to work, but Mouton notified her that, notwithstanding the grand jury's action, she was still on administrative leave because the investigation of the Risk Management Division had yet to be completed. As a result, Shearer appealed to the Municipal Civil Services Board ("Board") for relief on March 29, 1996. The Board ordered Bowen to report no later than April 8, 1996, his basis for keeping Shearer confined to her house and to provide her with the particulars of the charges brought against her.

Rather than respond, Bowen ordered Shearer to appear for a

pre-disciplinary hearing on April 8, 1996. Among the people in attendance were Marvin Leonard of the Personnel Office, Mayoral Assistant Lynn Molleck, Assistant City Attorney Mike Miley, the City's Fire Chief, Domingue, and Mouton. Miley conducted the hearing, questioning Shearer as to several matters that had transpired in the past and that had not resulted in any prior disciplinary action. Because she could not immediately answer many of those questions, Shearer was assured that she would have access to the City's files and a reasonable time to respond.

Within hours of the hearing, however, Mouton hand delivered a letter to Shearer, advising her to complete her research of the City files and to respond to Miley's requests by 5:00 p.m., Friday, April 12, 1996. On April 10, 1996, Shearer received for the first time a written notice of the charges and alleged evidence against her, including two additional charges that were being considered against her but which had not been discussed at the pre-disciplinary hearing. That same day, Bowen entered the room where Shearer had been assigned to review documents and announced that Shearer was not to be trusted alone with City documents and gave instructions that she only handle one file folder at a time and that she not remove anything from the files despite earlier promises that Shearer would have unrestricted access to the files. The following day, Shearer was informed that the deadline for response was extended, but only to 9:00 a.m., Monday, April 15, 1996.

4

On April 17, 1996, Shearer's employment was terminated. She subsequently appealed her firing to the Board, and on May 1, 1996, the Board reinstated Shearer to her position with full pay and benefits.

Thereafter, on February 7, 1997, Shearer filed suit under 42 U.S.C. § 1983 against Bowen, alleging various violations of her constitutional rights. Bowen answered, raising the defense of qualified immunity. On July 17, 1997, the magistrate judge assigned to the case filed an order requiring Shearer to file a Rule 7(a) reply pursuant to *Schultea v. Wood*, 47 F.3d 1427 (5th Cir. 1995) (en banc). In her reply, Shearer clarified her claims as alleged violations of her rights under the First, Fourth, Fifth, and Fourteenth Amendments. On October 10, 1997, Bowen moved for summary judgment seeking dismissal based on qualified immunity, to which Shearer responded. On November 13, 1997, the district court orally denied Bowen's motion in a brief hearing, merely stating that "[t]here are certainly material issues of fact on all issues in this matter that must be tried and determined by the Court." On November 21, 1997, Bowen filed a "Motion for an Order Granting Interlocutory Appeal" pursuant to 28 U.S.C. § 1292(b), which the district court granted on December 4, 1997. Consequently, Bowen filed a "Petition for Permission to Appeal" before this court on December 15, 1997. We denied that petition because it failed to provide a statement of the facts necessary to an understanding of

5

the proposed controlling questions of law. But since the petition had been filed within thirty days of the order denying summary judgment, we construed the petition as evidencing an intent to appeal and viewed it as a notice of appeal of right; whereupon, it now sits before us.

## II.

Despite denying Bowen's interlocutory appeal under 28 U.S.C. § 1292(b), we nevertheless requested briefing as to whether his appeal satisfied the criteria for appealability under the collateral order doctrine as stated in **Mitchell v. Forsyth**, 105 S. Ct. 2806 (1985), and its progeny. In **Mitchell**, the Supreme Court noted three characteristics for a decision to be appealable under the collateral order doctrine: 1) the decision can never be reviewed unless it is reviewed before the proceedings terminate; 2) the decision must conclusively determine the disputed question; and 3) that question must involve a claim of right separable from, and collateral to, rights asserted in the action. *See **id.** at 2815-16.* Based on those criteria, the Court concluded that a "district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." **Id.** at 2817.

More recently, the Court has further clarified the

6

appealability of an order denying qualified immunity, holding that such an order is not appealable if it merely determines a question of "evidence sufficiency," i.e., which facts a party may, or may not, be able to prove at trial. *See* **Johnson v. Jones**, 115 S. Ct. 2151, 2156 (1995). In that kind of sufficiency determination, nothing more is at stake than whether the evidence could support a finding that particular conduct occurred, and the question decided is not truly separable from the plaintiff's claim. *See* **Behrens v. Pelletier**, 116 S. Ct. 834, 842 (1996). Thus, a summary judgment order denying qualified immunity is generally not appealable insofar as it determines whether the pretrial record sets forth a genuine issue of fact for trial. *See* **Johnson**, 115 S. Ct. at 2159.

But not every denial of qualified immunity that includes a determination that there are controverted issues of material fact or states the magic words "material issues of fact remain" is nonappealable. When confronted with such an order that does not adequately state the controverted factual issues, we may undertake a review of the record to determine what facts the district court, in the light most favorable to the nonmoving party, likely assumed in making its decision. *See* **Johnson**, 115 S. Ct. at 2159. Assuming those facts, we may then determine if the district court erred in determining a purely legal issue, such as whether the law was clearly established, *see* *id.* at 2156, or whether a defendant's conduct was objectively reasonable in light of clearly established

7

law, *see **Behrens***, 116 S. Ct. at 842.

In the present case, the district court ruled that there are material issues of fact but did not discuss the factual issues relevant to its decision. Bowen, however, contends that accepting the nonmovant Shearer's factual allegations as true, she has failed to allege violations of any clearly established law or that he was not objectively reasonable in carrying out his discretionary duties as the City's mayor. Since those arguments raise purely legal issues, we retain jurisdiction to review this appeal.

## III.

Shearer's complaint and her Rule 7(a) reply state several claims that may summarily be phrased as the following:

> 1) by placing her on administrative leave and under surveillance, Bowen violated her freedom of movement and right to privacy under the Fourth Amendment;
> 2) the administrative leave and surveillance violated her right to freedom of association under the First Amendment;
> 3) the investigation constituted a criminal prosecution without probable cause in violation of the Fourth and Fifth Amendments;
> 4) her termination resulted in the deprivation of a property interest without due process of law in violation of the Fifth and Fourteenth Amendments;
> 5) the investigation and subsequent termination created an impression and public perception of criminal activity on the part of Shearer that deprived her of a liberty interest in her good reputation without due process of law.

Bowen, however, maintains that Shearer's allegations do not amount to violations of clearly established law and that even if they did, his actions were objectively reasonable in light of any clearly established law. We address each of Shearer's claims in turn.

8

A.   The Administrative Leave And Surveillance Did Not Violate Any Right To Privacy And Freedom Of Movement Under The Fourth Amendment

According to Shearer, she was required to remain at her residence during normal working hours pending the conclusion of a workplace investigation.  Moreover, she alleges that unidentified visitors in unmarked cars maintained surveillance over her activities.  Based on those allegations, Shearer argues that she was under "arrest" and that her freedom of movement and her right to privacy were infringed in violation of the Fourth Amendment.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  Thus, to determine whether Shearer's allegations suffice to establish a violation of clearly established law, we must first ask if they amount to an unreasonable search or seizure.  Shearer maintains that her being placed on administrative leave and surveilled constituted an "arrest," or seizure, for purposes of the Fourth Amendment.  According to Supreme Court precedent, a person has been seized "'[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen.'" *United States v. Mendenhall*, 100 S. Ct. 1870, 1876 (1980) (quoting *Terry v. Ohio*, 88 S. Ct. 1868, 1879 n. 16 (1968)).  That is, a seizure has occurred "if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."  *Id.* at 1877.

Notwithstanding Shearer's version of the facts, it is clear that she has not established that she was seized for purposes of a Fourth Amendment violation.  If Shearer had not been on administrative leave, she would have been required to be at her place of work during normal working hours as a condition of her employment, and no one contends that such an employment requirement is a seizure.  Shearer cites to no legal authority that lends support to the proposition that requiring an employee, who is on administrative leave with pay while under investigation for workplace abuse, to remain at home to facilitate communication with the investigation establishes a seizure within the meaning of the Fourth Amendment.  Although Shearer maintains that unmarked cars kept surveillance of her at home, she makes no allegations, let alone offers any evidence, that she felt unable to leave her home, that the individuals in those unmarked cars prohibited her from leaving her residence, or that those individuals displayed some physical force or a show of authority that necessitated her remaining at home.  Accordingly, even accepting Shearer's factual account, we see no seizure for purposes of the Fourth Amendment, and her allegations concerning the "arrest" do not state a constitutional claim for violation of her freedom of movement.

9

Likewise, we see no clearly established violation of a constitutional right to privacy under the Fourth Amendment. Before such a violation may occur, the government action must be unreasonable or constitute a meaningful interference. *See **United States v. York***, 895 F.2d 1026, 1028 (5th Cir. 1990) (quoting ***National Treasury Employees Union v. Von Raab***, 816 F.2d 170, 175 (5th Cir. 1987), *aff'd in part*, *vacated in part and remanded*, 109 S. Ct. 1384 (1989)). To aid in this determination, we have established a two-step analysis. First, we consider whether the "activity intrudes upon a reasonable expectation of privacy in such a significant way to make the activity a 'search.'" ***Id.*** Next, if we conclude that a search has occurred, then we must find whether the governmental intrusion was unreasonable in light of the particular facts of the case. *See **id.***

Here, despite Shearer's account of the facts, the surveillance instigated by Bowen did not intrude so significantly to constitute a search. At most, the unmarked cars were outside on a public street observing those actions of Shearer that could possibly be viewed. Although the right to privacy in the home is a reasonable expectation, we have previously noted that not every intrusion so significantly affects this expectation to amount to a search. *See **id.*** at 1029. For instance, police may look through an open window from any point on a public thoroughfare or sidewalk without engaging in a Fourth Amendment search. *See **id.*** With that example as a guide, we must conclude that surveillance by unmarked cars passing or parked on a public street does not rise to the constitutional magnitude of a search and that, therefore, Shearer has failed to establish a violation of her right to privacy under the Fourth Amendment.

B.   The Administrative Leave And Surveillance Did Not Violate Her Right To Freedom Of Association Under The First Amendment

The administrative leave and the surveillance also form the backbone of Shearer's claim that her right to freedom of association under the First Amendment was violated. The First Amendment protects the right of association in two ways: 1) to enter into and maintain certain intimate human relationships, as an element of personal liberty, and 2) for the purpose of engaging in expressive activities protected by the First Amendment. *See **Wallace v. Texas Tech Univ.***, 80 F.3d 1042, 1051 (5th Cir. 1996). There is no generalized right of social association. *See **id.*** In the instant case, Shearer has not alleged nor provided any facts that would demonstrate that her being required to stay at home during work hours on administrative leave with pay and under surveillance interfered with either of the two protections guaranteed by the First Amendment's right to freedom of association. Thus, we conclude that Bowen was improperly denied

10

qualified immunity on this claim.

C.     No Malicious Prosecution Occurred To Establish A Violation
       Under The Fourth Amendment

       Shearer's third claim alleges that Bowen's actions constituted a criminal prosecution without probable cause in violation of the Fourth and Fifth Amendments.[2]  In the past, we have recognized that there is a Fourth Amendment right to be free from malicious prosecution.  *See* **Kerr v. Lyford**, 171 F.3d 330, 339 (5th Cir. 1999).   But although a number of the procedural protections contained in the Bill of Rights including the Fifth Amendment's privilege against self-incrimination and Double Jeopardy Clause have been made applicable to the states by the Fourteenth Amendment, *see* **Albright v. Oliver**, 114 S. Ct. 807, 812 (1994), the Fifth Amendment only applies to violations by a federal actor, *see* **Jones v. City of Jackson**, 203 F.3d 875, 880 (5th Cir. 2000). Accordingly, under Shearer's version of the facts, she may only be able to state a violation of her Fourth Amendment right to be free from malicious prosecution.[3]

       To establish a constitutional violation for malicious prosecution, Shearer must show that all of its common law elements have been satisfied.  *See* **Evans v. Ball**, 168 F.3d 856, 862 n.9 (5th Cir. 1999).   Among those elements is a showing that a criminal action commenced against her.  *See* **Kerr**, 171 F.3d at 340.   Under Louisiana law, a prosecution is commenced when an indictment is returned or a bill of information is filed.  *See* **State v. Gladden**, 257 So. 2d 388, 391 (La. 1972).   Here, Bowen had the charges of theft and malfeasance referred to the district attorney, who then presented them to the grand jury.   The grand jury, however, returned a no true bill and did not indict her.   Consequently, Shearer has not established that a prosecution commenced against her, and her Fourth Amendment claim for malicious prosecution must

_____

       [2]Shearer also vaguely asserts that Bowen's actions constitute the use of legal process for a wrongful purpose, which violated her due process rights.   We also interpret this as stating a claim for prosecution without probable cause and note that there is no substantive due process right against such a claim.  *See* **Albright v. Oliver**, 114 S. Ct. 807, 814 (1994).

       [3]We construe Shearer's claim of a "criminal prosecution without probable cause" as a claim for malicious prosecution because a prosecution that is unsupported by probable cause but does not rise to the level of malicious prosecution is not a clearly established constitutional violation.  *See* **Evans v. Ball**, 168 F.3d 856, 862 n.9 (5th Cir. 1999).

fail.

D.   Shearer's Termination Did Not Deprive Her Of A Property
     Interest Without Due Process Of Law

Of Shearer's remaining two claims, they both concern alleged violations of the Due Process Clause of the Fourteenth Amendment.[4] In the first, she alleges that Bowen's termination of her employment violated procedural and substantive due process rights because it deprived her of a property interest without due process. Bowen counters that Shearer was provided with notice and a hearing, a detailed explanation of the City's evidence against her, and ample opportunity to present her side of the story.

Before proceeding to the heart of this matter, we must initially ask if Shearer had a property interest in her employment. Without a property interest, the Due Process Clause does not come into play. Bowen does not deny that Shearer had such an interest, and under Louisiana law, tenured or classified civil servant status is recognized as a property right that may not be deprived without due process of law. *See **Bell v. Department of Health & Human Resources***, 483 So. 2d 945, 949-50 (La. 1985). As such, we may proceed to whether Shearer's termination involved a denial of due process.

"The requisite procedural safeguards mandated by the Due Process Clause depend upon a balancing of the competing interests at stake." *See **Schaper v. City of Huntsville***, 813 F.2d 709, 716 (5th Cir. 1987); *see also **Glenn v. Newman***, 614 F.2d 467, 472 (5th Cir. 1980). Due to the excessive burden that would be placed on the government's interest in quickly removing an unsatisfactory employee, elaborate pre-termination proceedings are not required. *See **Schaper***, 813 F.2d at 716. But the opportunity to present reasons, in person or in writing, why a proposed action should not be taken is fundamental to the due process requirement. *See **Cleveland Bd. of Educ. v. Loudermill***, 105 S. Ct. 1487, 1495 (1985). At the very least, a tenured employee is "entitled to oral or written notice of the charges against [her], an explanation of the employer's evidence, and an opportunity to present [her] side of the story." ***Id.***

Based on Shearer's version of the facts, we find that her termination did not comply with procedural due process as required under the Fourteenth Amendment. Although a pre-termination disciplinary hearing was conducted, Shearer was never presented with a written explanation of the charges against her until after

---

[4]While Shearer also maintains that Bowen violated her Fifth Amendment right to due process, that amendment, as previously noted, pertains to federal, not state, actors.

the hearing transpired. Indeed, two of the charges that were ultimately pressed against Shearer were never discussed at the hearing. A complete summary of the charges was ultimately provided to Shearer but that was a mere two days before she was originally required to respond. Considering the number of files that needed to be reviewed, the constraints placed on Shearer's accessibility to those files, and the broad nature of the charges, we conclude that Shearer was not afforded the opportunity to present her side of the story and that the pre-termination procedures did not conform to constitutional standards.

Nevertheless, any procedural infirmity was cured by Shearer's ability to appeal her termination to the Board and its decision to reinstate her with full pay and benefits. *See* **Schaper**, 813 F.2d at 716; **Glenn**, 614 F.2d at 472. In **Schaper**, a police officer brought a § 1983 action against the city, claiming due process violations arising out of his termination. *See* **Schaper**, 813 F.2d at 711. After he was terminated, he filed an appeal with the city council as provided for in the city charter and the city's personnel policies. *See* **id.** at 712. The city council affirmed the termination. *See* **id.** We concluded that the city charter's provision granting the right to appeal the original termination decision to the city council facilitated a finding that there was no procedural due process violation. *See* **id.** at 716.

**Glenn** also involved a § 1983 suit brought by a police officer who had his employment terminated. *See* **Glenn**, 614 F.2d at 468-69. While we held that the pre-termination procedures did not conform to minimum due process requirements, we nonetheless ruled that any error had been cured by the police officer's subsequent post-termination hearing before the mayor and city council. *See* **id.** at 472. But we noted that the police officer was entitled to damages accrued during the period between the original dismissal and the date of his post-termination hearing and remanded the case back to the district court for a calculation.[5] *See* **id.** at 473.

---

[5]In **County of Monroe v. United States Dep't of Labor**, 690 F.2d 1359, the Eleventh Circuit criticized and overruled this decision of the old Fifth Circuit as it pertained to the award of back pay for a violation of procedural due process. Relying on **Carey v. Piphus**, 98 S. Ct. 1042 (1978), and **Wilson v. Taylor**, 658 F.2d 1021 (5th Cir. Unit B Oct. 1981), the Eleventh Circuit concluded that to recover more than nominal damages, those damages had to be due to the procedural defect, and not just the resulting suspension. *See* **County of Monroe**, 690 F.2d at 1362-63. That is, if the correct procedures had been followed and the plaintiff would still have been terminated, then back pay did not have to be awarded. *See* **id.** We have yet to endorse this proposition or to overrule **Glenn**.

Since Shearer was afforded an opportunity to appeal her termination and make her case before the Board, we find that in light of **Schaper** and **Glenn**, any procedural defect in the pre-termination process was remedied. Furthermore, to the extent that the Board's reinstatement of Shearer with full pay and benefits included back pay, we conclude that there are no other damages to which she may be entitled.

Similarly, we reject Shearer's allegations that the termination violated substantive due process. Although we have previously recognized that an individual may have a substantive due process right in continued employment, *see* **Schaper**, 813 F.2d at 717, we have also discerned a difference between those rights that emanate from the Constitution and those that arise under state law, such as Shearer's property interest in her employment, *see id.* at 718. In the latter case, a claim alleging deprivation of substantive due process is often nothing more than a regurgitation of a procedural due process claim. *See id.* Thus, "[w]e regard the availability of a prompt post-termination administrative hearing as a significant factor in rejecting [Shearer's] substantive claim," *id.*, and conclude that Bowen is immune from such a claim.

E.   The Investigation and Subsequent Termination Did Not Deprive Shearer Of A Liberty Interest In Her Good Reputation Without Due Process Of Law

Shearer's second due process claim, and her last overall claim, is that Bowen's actions created an impression and public perception of criminal activity on the part of Shearer that harmed her liberty interest in her good reputation in violation of due process. She contends that Bowen had a City employee alert the media as to her suspension for theft of public funds.

Generally, a person's interest in her reputation is one of a number which a state may protect against injury by virtue of its tort law,[6] *see*, *e.g.*, **Paul v. Davis**, 96 S. Ct. 1165-66 (1976), and standing alone, apart from some tangible interest such as employment, it is not a sufficient liberty interest to invoke the procedural protections of the Due Process Clause, *see id.* at 1160-61. The weight of the Supreme Court's decisions establishes "no constitutional doctrine converting every defamation by a public official into a deprivation of liberty within the meaning of the Due Process Clause of the . . . Fourteenth Amendment." **Id.** at 1161. But where the asserted liberty interest concerns an individual's freedom to work and earn a living and to establish a home and position in one's community, the Due Process Clause does

---

[6] Indeed, Shearer has not established, nor even alleged, that Louisiana extends any legal guarantee of a present enjoyment of reputation.

14

come into play.  *See **Cabrol v. Town of Youngsville***, 106 F.3d 101, 107 (5th Cir. 1997).  In those cases, a public employee is deprived of a protected liberty interest without due process of law "either if terminated for a reason which was (i) false, (ii) publicized, and (iii) stigmatizing to his standing or reputation in his community or if terminated for a reason that was (i) false and (ii) had a stigmatizing effect such that (iii) he was denied other employment opportunities as a result."  ***Id.***

Here, Shearer argues that Bowen's investigatory actions and her subsequent termination had a stigmatizing effect on her reputation.  The problem with Shearer's claim, however, is that while she was initially terminated, she was quickly afforded the opportunity to appeal her termination, i.e., to provide her side of the story and to clear her name, and was soon reinstated with full pay and benefits.  This post-termination proceeding validated her position and vindicated her rights, thus ameliorating any possible due process violation.  *See*, *e.g.*, ***Rosenstein v. City of Dallas***, 876 F.2d 392, 395-96 (5th Cir. 1989) (disclosing charges against a discharged employee does not create a liberty interest violation if procedural due process, such as a post-termination opportunity to clear one's name, is afforded to the former employee).  Furthermore, the only evidence of publication concerns Bowen's supposed use of an employee to alert the media as to Shearer's placement on administrative leave with pay due to allegations of theft.  But at the time of this publication, Shearer had not been terminated.  Thus, there is no indication of Shearer's termination on a false basis having been publicized.  Accordingly, we infer no violation of a liberty interest based on Bowen's investigatory actions and Shearer's subsequent termination and reinstatement, and conclude that Shearer has failed to establish a violation of clearly established law.

**IV.**

For the foregoing reasons, we find that the district court erred in denying summary judgment to Bowen on the ground of qualified immunity and vacate the judgment of the district court and remand for entry of judgment for Bowen on qualified immunity grounds.

15