# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 17, 2021

Lyle W. Cayce
Clerk

No. 20-10764

Christopher Kelson; Dakota Kelson, and Estate of Hirschell Fletcher, Jr.; Rylie Kimbrell; Estate of Hirschell Fletcher, Jr.,

*Plaintiffs—Appellees*,

*versus*

Kyle Foster Clark, *Firefighter*; Brad Alan Cox, *Firefighter*,

*Defendants—Appellants*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:18-CV-3308

Before Wiener, Elrod, and Higginson, *Circuit Judges*.

Stephen A. Higginson, *Circuit Judge*:

This interlocutory appeal arises out of the district court's denial of defendants Kyle Clark and Brad Cox's motion to dismiss on the basis of qualified immunity for claims of failure to treat and the wrongful death of Hirschell Wayne Fletcher, Jr., who died from previously sustained head trauma while in custody. We AFFIRM.

No. 20-10764

I.

As alleged in the plaintiffs' operative complaint, at approximately 5:30 p.m. on December 30, 2016, Hirschell Wayne Fletcher, Jr., who was homeless and previously diagnosed with schizophrenia, was assaulted and robbed outside a soup kitchen in Dallas, Texas.  Shortly thereafter, Fletcher was again assaulted—this time, a punch to the head—causing him to fall and hit his head on a wall.  Bystanders subsequently alerted Dallas Police Officer George Morales to the incident.  After briefly speaking to Fletcher, Morales called two fellow officers as well as two Dallas Fire-Rescue paramedics, Kyle Clark and Brad Cox, to the scene.

Fletcher told the officers and paramedics that he needed medical attention for his head injuries, for which it is alleged that "[b]lood and contusions from the beatings was [sic] patently visible."  However, "instead of examining and treating him," the officers and paramedics "began harassing and openly laughing" at Fletcher for ten minutes as he sat on the sidewalk in pain.[1]  It is further alleged that the police officers "assumed Fletcher to be drunk," but "made no investigation to determine whether Fletcher was intoxicated."[2]

Fletcher was subsequently arrested, charged with public intoxication, and taken to the Dallas Marshal's Office and City Detention Center.  Fletcher continued to complain of his visible head injuries and need for

---

[1] This interaction was also recorded on Officer Morales's body and car cameras.

[2] On appeal, plaintiffs say that Fletcher was "sober," but this is not expressly alleged in the operative complaint, which alleges only that "Defendants Morales, Todd, and Morris assumed Fletcher to be drunk" and that they "made no investigation to determine whether Fletcher was intoxicated before or after arresting and imprisoning Fletcher and thereafter charging him for public intoxication . . . solely because he was homeless and mentally ill."

No. 20-10764

medical attention to Officer Morales while in transit and again to the booking officers upon arrival at the detention center.

Once booked, Fletcher lay underneath a mattress in his cell and was allegedly ignored by the officers who passed by intermittently. The next morning, at 5:00 a.m. on December 31, 2016, Fletcher was found unresponsive in his cell and rushed to the hospital. He died shortly thereafter due to a bleed caused by the head injuries he sustained the day before.

Allegedly, paramedics Clark and Cox later falsely stated in their reports that they never had any contact with Fletcher on December 30, 2016, to "cover up their egregious behavior." Clark and Cox were subsequently indicted in Dallas County state court for "falsifying their report stating that Fletcher had been taken from the scene prior to their arrival."[3]

In December 2018, Fletcher's estate and children subsequently filed this suit for monetary damages pursuant to 42 U.S.C. § 1983 against the City of Dallas, the individual Dallas police officers, the two paramedics (Clark and Cox), and the individual detention facility employees. This interlocutory appeal involves only the claims against paramedics Clark and Cox for failure to treat in violation of the Fourteenth Amendment and a derivative wrongful death claim.

On September 13, 2019, Clark and Cox moved to dismiss the two claims against them on the basis of qualified immunity. On July 14, 2020, the

---

[3] At the time of the operative complaint, Clark and Cox's criminal cases were still pending. Since then, plaintiffs assert that "Clark and Cox both pled guilty to the charges for tampering with a government record," and ask us to take judicial notice of those guilty pleas. We need not do so here because it is enough at this stage to accept as true, as we must, plaintiffs' well-pleaded allegations that the paramedics were indicted for this conduct.

district court summarily denied their motion in a two-paragraph order. Clark and Cox timely appealed the district court's denial of qualified immunity.[4]

## II.

"[A] district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). Consequently, we have jurisdiction to review Clark and Cox's interlocutory appeal of the district court's denial of qualified immunity under the collateral order doctrine. *Id.*; *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

We review the district court's denial of Clark and Cox's motion to dismiss de novo.[5] *McLin v. Ard*, 866 F.3d 682, 688 (5th Cir. 2017). In doing so, "we must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the nonmoving party." *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc). However, we do not presume to be true

---

[4] Clark and Cox are represented separately from the other defendants. The Dallas police officers and detention facility employees also moved to dismiss the § 1983 claims against them for failure to state a claim under Rule 12(b)(6), but they did not assert qualified immunity. The district court denied this motion in the same order denying Clark and Cox's qualified immunity defense. Since then, on August 4, 2020, the remaining defendants moved for summary judgment asserting, *inter alia*, qualified immunity. On October 6, 2020, the district court granted the parties' joint request to stay the case pending this court's resolution of Clark and Cox's interlocutory appeal, while noting that the City and police officers' motion for summary judgment remains pending.

[5] Ordinarily "[d]istrict courts should state for the record the reasons for denying immunity. We assume from the district court's form dismissal, however, that it found that disputed issues of material fact existed, which, if true, would constitute violations of clearly established law by [Clark and Cox]." *Morin v. Caire*, 77 F.3d 116, 119 n.3 (5th Cir. 1996) (citations omitted); *accord Schaper v. City of Huntsville*, 813 F.2d 709, 713 (5th Cir. 1987) ("[D]istrict courts should state for the record, and for the benefit of the circuit court on appeal, their reasons for denying immunity.").

"legal conclusions; mere 'labels'; '[t]hreadbare recitals of the elements of a cause of action'; 'conclusory statements'; and 'naked assertions devoid of further factual enhancement.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Though the complaint need not contain "detailed factual allegations," it must contain sufficient factual material that, accepted as true, "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). "[O]f course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Twombly*, 550 U.S. at 556.

"When a defendant asserts a qualified-immunity defense in a motion to dismiss, the court has an 'obligation . . . to carefully scrutinize [the complaint] before subjecting public officials to the burdens of broad-reaching discovery.'" *Longoria v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 263–64 (5th Cir. 2019) (alterations in original) (quoting *Jacquez v. Procunier*, 801 F.2d 789, 791 (5th Cir. 1986)). "[A] plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe*, 691 F.3d at 648. Courts are obligated to "implement a qualified immunity defense 'at the earliest possible stage of litigation,'" because "qualified immunity means immunity from having to stand trial, not simply immunity from monetary liability." *Westfall v. Luna*, 903 F.3d 534, 542 (5th Cir. 2018) (quoting *Brown v. Glossip*, 878 F.2d 871, 874 (5th Cir. 1989)).

"The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Morgan*, 659 F.3d at 370. "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314,

323 (5th Cir. 2002) (en banc).  The plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Morgan*, 659 F.3d at 371 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).

## III.

The plaintiffs primarily assert that paramedics Clark and Cox violated Fletcher's Fourteenth Amendment right when they failed to treat his visible head wounds, which ultimately led to his death.  *See Hare v. City of Corinth*, 74 F.3d 633, 645 (5th Cir. 1996) (en banc).  Specifically, they claim that Clark and Cox "were trained to provide medical care, they had a duty to assess and render care to those in need, . . . and they breached that duty."

"[P]retrial detainees have a constitutional right, under the Due Process Clause of the Fourteenth Amendment, not to have their serious medical needs met with deliberate indifference." *Thompson v. Upshur Cnty.*, 245 F.3d 447, 457 (5th Cir. 2001) (citing, *inter alia*, *Estelle v. Gamble*, 429 U.S. 97, 103 (1976), and *Hare*, 74 F.3d at 636).  "To succeed on a deliberate-indifference claim, plaintiffs must show that (1) the official was 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' and (2) the official actually drew that inference." *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (quoting *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 755 (5th Cir. 2001)).

"Deliberate indifference is an extremely high standard to meet." *Id.* (quoting *Domino*, 239 F.3d at 756).  An official is not liable unless he "knows of and disregards an excessive risk" to a plaintiff's safety.  *Garza v. City of Donna*, 922 F.3d 626, 635 (5th Cir.) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)), *cert. denied*, 140 S. Ct. 651 (2019).  However, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d

at 459 (citing *Hare*, 74 F.3d at 649–50). Rather, "the plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino*, 239 F.3d at 756 (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)); *accord Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006).

## A.

As a threshold matter, the parties dispute whether plaintiffs adequately allege that Fletcher was in police custody as an arrestee or pretrial detainee. The parties agree that the paramedics' obligations under the Fourteenth Amendment began only once Fletcher was detained by the police. However, Clark and Cox assert that the "pleadings fail to establish that Fletcher was in custody at the time that Clark and Cox allegedly failed to treat him."

"After the initial incidents of a seizure have concluded and an individual is being detained by police officials but has yet to be booked, an arrestee's right to medical attention, like that of a pretrial detainee, derives from the Fourteenth Amendment." *Nerren v. Livingston Police Dep't*, 86 F.3d 469, 473 (5th Cir. 1996). In the Fourth Amendment context, "a seizure occurs when, under the totality of the circumstances, a reasonable person would have thought he was not free to leave." *Keller v. Fleming*, 952 F.3d 216, 222 (5th Cir. 2020) (citing *Michigan v. Chesternut*, 486 U.S. 567, 572 (1988)). "Physical force is not required to effect a seizure; however, absent physical force, '*submission* to the assertion of authority' is necessary." *McLin*, 866 F.3d at 691 (quoting *California v. Hodari D.*, 499 U.S. 621, 626 (1991)); *accord Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968) ("Only when the officer, by means of physical force or show of authority, has in some way

restrained the liberty of a citizen may we conclude that a 'seizure' has occurred.'").

Clark and Cox principally argue that the complaint does not allege that Fletcher was physically restrained at the time they arrived on the scene, and that after their alleged failure to treat Fletcher, he was "*thereafter*" arrested and taken to the detention facility. Clark and Cox concede, as they must, that "a reasonable person would not have thought that Fletcher was free to leave once Fletcher was being transported to the City's detention facility in Officer Morales' patrol car," but that "prior to that point, Fletcher was neither an arrestee nor pretrial detainee . . . [while] just sitting on the sidewalk talking with the officers and paramedics." By contrast, the plaintiffs argue that Fletcher was detained earlier: he "submitted to police authority and reasonably believed [he] was not free to leave [] while on the street before being transported to the Detention Center."[6]

While we agree with Clark and Cox that the precise timeline of events is underdeveloped, "detailed factual allegations" are not required at the pleadings stage. *See Iqbal*, 556 U.S. at 678. Mindful of the standards governing Clark and Cox's motion to dismiss, and drawing all reasonable inferences in favor of the nonmoving party, the plaintiffs have pleaded sufficient factual material to allege that Fletcher was detained.

For example, by the time Clark and Cox arrived, the plaintiffs allege that Officer Morales had already called two other police officers to the scene. With the arrival of the two paramedics, the plaintiffs allege that Fletcher was surrounded, and harassed, by five officers while he sat on the sidewalk.

---

[6] Plaintiffs also assert on appeal that Fletcher was "intercepted and forced to sit on the sidewalk." We do not rely on these statements because they are not alleged in the operative complaint.

No. 20-10764

Fletcher was subsequently arrested, cited for public intoxication, and transported to the detention facility.

Consequently, we agree with the plaintiffs that between when Clark and Cox arrived and allegedly failed to treat Fletcher, but before he was formally transported, a reasonable person in Fletcher's position—surrounded and confronted by five officers—may not have thought he was free to leave, and was therefore detained. Clark and Cox's alternative argument rests on an overly narrow reading of the operative complaint and an undue reliance on the word "thereafter."

B.

Next, we consider whether the plaintiffs sufficiently allege that Fletcher's constitutional rights were violated. The parties do not dispute that pretrial detainees have a Fourteenth Amendment right to medical care. *See Hare*, 74 F.3d at 645; *Thompson*, 245 F.3d at 457; *Dyer*, 964 F.3d at 380. Rather, we must determine whether the plaintiffs here adequately allege that paramedics Clark and Cox acted with deliberate indifference in failing to treat Fletcher.

After arriving on the scene, Clark and Cox allegedly failed to provide any substantive treatment to Fletcher, despite "patently visible" "[b]lood and contusions" and Fletcher's repeated protestations of a head injury. Contrary to Clark and Cox's assertions, the paramedics were not "merely" negligent in failing to provide "additional treatment," or because they provided an "incorrect diagnosis"—both of which our court has emphasized are insufficient to establish deliberate indifference. *See Dyer*, 964 F.3d at 381; *Domino*, 239 F.3d at 756. Here, the plaintiffs allege that the paramedics entirely failed to treat Fletcher despite his protestations and visible head injuries. To the extent Clark and Cox assert that they could not have been expected to diagnose Fletcher's internal bleeding, our court has emphasized

that an "official's knowledge of a substantial risk of harm may be inferred if the risk was obvious." *Easter*, 467 F.3d at 463–64 (distinguishing "mere disagreement with the course of treatment" from allegations that nurse refused to provide treatment to prisoner complaining of severe chest pain after being informed of his history of cardiac problems, which "meets the 'deliberate indifference' threshold").

Moreover, instead of treating or even evaluating the visible head injuries, Clark and Cox allegedly mocked Fletcher and then, in an apparent attempt to cover their tracks, allegedly lied in their official report about interacting with Fletcher at all. Taken together, this is enough to allege that the officials "refused to treat him," "ignored his complaints," and engaged in conduct that "clearly evince[d] a wanton disregard for any serious medical needs." *Domino*, 239 F.3d at 756 (internal quotation marks and citation omitted).

Clark and Cox's contrary arguments are unavailing. They primarily assert that Fletcher's allegations are indistinguishable from *Dyer v. Houston*, in which this court affirmed the paramedics' motion to dismiss based on qualified immunity. 964 F.3d at 380–81. We disagree.

In *Dyer*, the plaintiffs brought deliberate indifference claims against the paramedics and officers following the death of their 18-year-old son, Graham, who died in police custody. *Id.* at 377. When the paramedics arrived on the scene, they examined Graham, who "had sustained a visible and serious head injury," and learned that he "had ingested LSD and was incoherent and screaming . . . and was in a drug induced psychosis." *Id.* at 377–78. Following the paramedics' examinations, Graham was "walked to the police car without resistance or struggle" and driven to jail. *Id.* at 378. While being transported by the police officers (but not the paramedics), Graham repeatedly bashed his head against the car over 40 times, and

subsequently died as a result of the "extensive blunt force injuries to [his] head and cranial hemorrhaging." *Id.* at 379.

The *Dyer* plaintiffs claimed that the paramedics violated Graham's Fourteenth Amendment right because, "after examining Graham and observing his head injury and drug-induced behavior," they should have provided additional care, such as sending Graham to the hospital, providing further monitoring, or sedating him. *Id.* at 381. In affirming the district court's dismissal of these claims, this court held that the parents alleged "[a]t most . . . that the Paramedics acted with negligence in not taking further steps to treat Graham after examining him," which is insufficient to support a deliberate indifference claim. *Id.* Moreover, "the decision whether to provide additional treatment is a classic example of a matter for medical judgment, which fails to give rise to a deliberate-indifference claim." *Id.* (internal quotation marks and citations omitted).

As in *Dyer*, Clark and Cox assert that the plaintiffs here allege that the paramedics failed to properly treat Fletcher or bring him to the hospital despite being alerted that he suffered a serious head injury. But that is where the similarities end. Unlike in *Dyer*, Clark and Cox's alleged conduct demonstrated that they had a greater awareness of Fletcher's visible head injuries—both allegedly in the moment and after the fact in their false reporting—yet simultaneously they provided less treatment than the *Dyer* paramedics.[7]

---

[7] On this point, our court's reversal of the district court's dismissal of the deliberate indifference claims against the *officers* in *Dyer v. Houston* is also illustrative. *Dyer*, 964 F.3d at 381. There, in reviewing the summary judgment record, we concluded that a reasonable factfinder could find that the *Dyer* officers were aware that Graham, "in the grip of a drug-induced psychosis, struck his head violently . . . over 40 times en route to jail and thereby sustained severe head trauma," yet "sought no medical care" for him, "[n]or did they alert jail officers" of the incident. *Id.* at 381–82. Consequently, we held that "[a] reasonable

Clark and Cox further attempt to minimize these allegations, contending that "inappropriate comments and/or laughing are legally irrelevant" to deliberate indifference claims. Not so. For example, in affirming the officers' motion for summary judgment on the deliberate indifference claims in *Aguirre v. City of San Antonio*, 995 F.3d 395 (5th Cir. 2021), the court noted that an officer's demeanor is relevant to determining whether he subjectively disregarded a risk of serious harm. In that case, the police's dashcam videos showed that the officers surrounding Aguirre—who was lying in a prone, "hog-tie-like" position, ultimately leading to his death from asphyxiation—were "smiling and laughing" before an officer attempted CPR. *Id.* at 403–04. However, the court emphasized that the officers "quickly took on a sober aspect as Aguirre remained unresponsive, which suggests their initial manner was the result of subjective unawareness of the risk rather than knowledge of the risk and a deliberate choice not to take any precautions against the realization of the danger's fatal consequences." *Id.* at 421.[8]

By contrast, the plaintiffs here allege that Clark, Cox, and the surrounding officers harassed and laughed at Fletcher until he was transported to the detention facility, all without any medical treatment. As

---

jury could find that Graham's injuries—from which Graham would die within roughly 24 hours—were so severe, and their cause so plainly evident to the Officers, that the Officers acted with deliberate indifference by failing to seek medical attention" and "failing to inform jail personnel about [his] injuries." *Id.*

[8] Clark and Cox cite other inapposite authority for the proposition that an officer's threats or use of racial slurs are insufficient to sustain an excessive force claim, which are not germane to plaintiffs' allegations here. *See Bender v. Brumley*, 1 F.3d 271, 274 & n.4 (5th Cir. 1993) ("Mere allegations of verbal abuse do not present actionable claims under § 1983." (citing *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983))).

alleged, such conduct supports that the paramedics may have been both subjectively aware of, and disregarded, Fletcher's serious risk of injury.[9]

## C.

As to the second prong of qualified immunity, we consider whether Fletcher's constitutional rights were clearly established at the time plaintiffs allege that he was denied treatment. Our analysis under this prong "asks whether the detainee's right to treatment for serious medical needs was 'clearly established' such that every 'reasonable official would understand that what [he] is doing violates that right.'" *Baldwin v. Dorsey*, 964 F.3d 320, 326 (5th Cir. 2020) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)), *cert. denied*, 141 S. Ct. 1379 (2021). "To answer that question in the affirmative, we must be able to point to controlling authority—or a 'robust consensus of persuasive authority'—that defines the contours of the right in question with a high degree of particularity." *Morgan*, 659 F.3d at 371–72 (quoting *al-Kidd*, 563 U.S. at 742); *accord Mullenix v. Luna*, 577 U.S. 7, 12 (2015) ("We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." (quoting *al–Kidd*, 563 U.S. at 741)).

It is undisputed that, at the time Clark and Cox allegedly failed to treat Fletcher, the law was clearly established that pretrial detainees have a Fourteenth Amendment right to medical care. *See, e.g.*, *Hare*, 74 F.3d at 645; *Thompson*, 245 F.3d at 457; *Dyer*, 964 F.3d at 380; *see also Jacobs v. W. Feliciana Sheriff's Dep't*, 228 F.3d 388, 393–94 (5th Cir. 2000). Nor is it disputed that plaintiffs could demonstrate a violation of Fletcher's

---

[9] Clark and Cox also argue that plaintiffs' derivative wrongful death claim should be dismissed because the plaintiffs fail to allege a plausible failure to treat claim. Because we conclude otherwise, Clark and Cox's dismissal challenge to the wrongful death claim likewise fails.

constitutional rights by showing that an official "'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino*, 239 F.3d at 756 (quoting *Johnson*, 759 F.2d at 1238); *Easter*, 467 F.3d at 464 (same).

Instead, Clark and Cox argue that clearly established law does not require them to provide medical care to an individual who is "*not* a pretrial detainee." This is irrelevant; for the reasons previously stated, Fletcher was allegedly detained at the relevant time. Alternatively, Clark and Cox contend that the law does not require them to diagnose an "internal brain bleed that was not observable to the naked eye." But that mischaracterizes the complaint, which alleges that the paramedics failed to treat Fletcher's visible head injuries at all.

## IV.

For the foregoing reasons, the district court's denial of Clark and Cox's motion to dismiss on the basis of qualified immunity is AFFIRMED.

14