# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 1, 2025

Lyle W. Cayce
Clerk

No. 24-40561

The Estate of the Decedent Dontriel Jovan Coates; Cherrie E. Coates, *Individually and as Next Friend for* K.A.D and M.J.D., *Minors*,

*Plaintiffs—Appellants*,

*versus*

Brian C. Hawthorne; Chambers County Sheriff's Office; Chambers County, Texas,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:23-CV-210

_____

Before Stewart, Clement, and Wilson, *Circuit Judges*.

Per Curiam:[*]

Dontriel Coates died while in police custody in Chambers County, Texas. At some point after arriving at the jail, and unbeknownst to the jailers, baggies of illegal drugs that Coates had swallowed en route ruptured in his stomach. Upon learning that Coates was in distress—and as he suffered

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

seizures in his cell—a jail nurse took his vitals (pulse and blood pressure) and said that Coates was "good." No one provided Coates any additional medical care, and he died minutes later.

Coates's estate and surviving family members sued the Chambers County Sheriff, the Sheriff's Office, and Chambers County, alleging claims for negligence, wrongful death, conspiracy to deprive Coates's heirs of their constitutional rights under 42 U.S.C. § 1985(3), and violation of Coates's constitutional rights under 42 U.S.C. § 1983. The district court dismissed the case, partly for lack of subject-matter jurisdiction and partly for failure to state a claim. We affirm.

## I.

Coates was walking down a road in Chambers County, Texas, when deputy sheriff Kyle Barnes made non-law enforcement contact with him by offering him a "courtesy ride home."[1] Though Coates had an outstanding warrant for his arrest and possessed illegal drugs at the time, Coates got in the vehicle. At some point during the "courtesy ride" the encounter became custodial in nature, for reasons unspecified in the complaint, and Deputy Barnes drove Coates to the Chambers County Jail. During the drive, Coates swallowed baggies containing illegal drugs, but it is unclear whether he did this before or after the ride became custodial.

Coates arrived at the jail and was placed in a cell. At least one of the baggies he had swallowed eventually ruptured. This led to a severe adverse reaction causing Coates to grunt loudly in pain and to go into seizures as he sat on his cell's toilet. Other inmates heard Coates screaming and called for help. Sheriff's Office personnel responded, moved Coates from the toilet,

---

[1] "We take the facts from the complaint, as is appropriate in a motion-to-dismiss posture." *Robinson v. Midland Cnty.*, 80 F.4th 704, 707 n.1 (5th Cir. 2023).

and "rested him in a seated position against the interior cage wall of the cell." Jail nurse Rhonda Meguess checked Coates's blood pressure and pulse and "announced that he was 'good.'" But he was not "good"; Coates died shortly after Meguess and the other Sheriff's Office personnel left the cell, propped in the same position they had left him.

Approximately two hours later, apparently unaware that other inmates had been calling for help, a deputy who was taking food to the inmates discovered that Coates had died. The deputy called emergency responders, who confirmed that Coates was dead, loaded his body onto a gurney, and removed him from the jail.

Afterward, Coates's Estate, his mother, and his children (collectively, Plaintiffs) attempted to obtain information from Chambers County about Coates's death. The Texas Attorney General advised the county not to provide responsive records because such disclosure "would interfere with the detection, investigation, or prosecution of [a] crime." 2022 Tex. AG Rul. OR2022-06100, (February 28, 2022). According to Plaintiffs, this "suppression" of information wrongfully withheld necessary facts required for them fully to investigate the circumstances of Coates's death prior to filing suit. Eventually, the Sheriff's Office released a custodial death report after an investigation by Texas Ranger Joseph Dreaden. But Plaintiffs allege that this report is in direct tension with eyewitness reports from the jail and was intentionally falsified to protect the defendants, particularly the Sheriff.

Plaintiffs sued Sheriff Bryan Hawthorne in his official capacity, the Chambers County Sheriff's Office, and Chambers County (collectively,

No. 24-40561

Defendants).[2] Plaintiffs alleged negligence[3] and wrongful death claims under the Texas Wrongful Death Act (TWDA), violation of 42 U.S.C. § 1985(3) for conspiracy to deprive Plaintiffs of equal protection by wrongfully withholding public information from them, and violations of Coates's constitutional rights under 42 U.S.C. § 1983. The district court granted Defendants' motion to dismiss the wrongful death claim under Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction, agreeing that the TWDA does not allow for suit against a county. The district court dismissed the § 1985(3) and § 1983 claims for failure to state a viable claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs now appeal, challenging the district court's Rule 12(b)(1) dismissal of their wrongful death claim against Sheriff Hawthorne, its Rule 12(b)(6) dismissal of their federal claims, and its decision not to allow Plaintiffs limited discovery under Federal Rule of Civil Procedure 56(d) before dismissing those claims.

## II.

"We review a district court's grant of a [Rule] 12(b)(1) motion to dismiss for lack of subject matter jurisdiction de novo." *Crane v. Johnson*, 783 F.3d 244, 250 (5th Cir. 2015). In determining whether the court has subject-matter jurisdiction, we must accept as true the allegations set forth in the complaint. *Id.* at 251. We likewise review a district court's dismissal of

---

[2] According to Plaintiffs, Meguess and officers present at the jail during this incident "acted in an official capacity under color of law on behalf of [Defendants]."

[3] Plaintiffs raise no argument relating to their negligence claim on appeal and have thus abandoned any issue as to that claim. *Ayorinde v. Team Indus. Servs. Inc.*, 121 F.4th 500, 510 (5th Cir. 2024) ("It is well established that an 'appellant abandons all issues not raised and argued in its *initial* brief on appeal.'" (quoting *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994))). We likewise do not address it further.

4

claims under Rule 12(b)(6) de novo. *Taylor v. City of Shreveport*, 798 F.3d 276, 279 (5th Cir. 2015).

"We review the district court's denial of a Rule 56(d) motion for abuse of discretion." *Am. Family Life Assurance Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013) (per curiam). The district court "has broad discretion in all discovery matters, and such discretion will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse." *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000) (cleaned up).

## III.

### A.

Plaintiffs contend that the district court has subject-matter jurisdiction to hear their TWDA claim. The TWDA sets forth the circumstances under which "[a] person is liable for damages arising from an injury that causes an individual's death." TEX. CIV. PRAC. & REM. CODE § 71.002. Plaintiffs concede that a Texas county cannot be liable under the TWDA because counties are not "persons" under the statute. TEX. CIV. PRAC. & REM. CODE § 71.001 ("'Person' means an individual, association of individuals, joint-stock company, or corporation or a trustee or receiver of an individual, association of individuals, joint-stock company, or corporation."). Plaintiffs thereby acknowledge that they cannot assert a TWDA claim directly against Chambers County.

Instead, Plaintiffs attempt a workaround by suing Hawthorne. They argue that "liability ostensibl[y] rests with the county through its elected sheriff Brian C. Hawthorne and his agents" because "[a] government agency 'can act only through its human agents.'" They rely on two cases to support this argument, *Rhyne v. Henderson County*, 973 F.2d 386 (5th Cir. 1992), and *De Paz v. Duane*, 858 F. App'x 734 (5th Cir. 2021). Both involved the

question of whether federal courts have jurisdiction over state wrongful death claims through 42 U.S.C. § 1983 when "state law authorizes those claims." *De Paz*, 858 F. App'x at 737; *see Rhyne*, 973 F.2d at 390–91. However, neither case supports Plaintiffs' position here, as the TWDA does not authorize claims against Texas counties, either directly, or indirectly via a county official. Tex. Civ. Prac. & Rem. Code §§ 71.001, 71.002.

Because Plaintiffs sued Hawthorne in his official capacity, the "suit is, in all respects other than name, to be treated as a suit against the [county]," not as "a suit against the official personally." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *see also id.* ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 n.55 (1978))). As a result, and because a wrongful death claim against Chambers County is not cognizable under the TWDA, Tex. Civ. Prac. & Rem. Code §§ 71.001, 71.002, the district court correctly dismissed Plaintiffs' TWDA claim for lack of subject-matter jurisdiction.

## B.

Plaintiffs next argue that the district court erred in its Rule 12(b)(6) dismissal of their 42 U.S.C. § 1985(3) claim for conspiracy to deprive them of equal protection by wrongfully withholding governmental records. To state a claim under § 1985(3), Plaintiffs must plausibly allege:

> (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States.

*Hilliard v. Ferguson*, 30 F.3d 649, 652–53 (5th Cir. 1994). A plaintiff must also show that the alleged conspiracy was motivated by class-based animus.

*Griffin v. Breckinridge*, 403 U.S. 88, 102 (1971). Here, the district court determined that Plaintiffs did "not allege[] sufficient facts suggesting discriminatory motivation to state a plausible claim for relief," nor did they "allege facts that suggest an agreement among the alleged co-conspirators existed." *See Green v. State Bar*, 27 F.3d 1083, 1089 (5th Cir. 1994).

Regarding class-based animus, Plaintiffs assert that they "have indirect evidence showing discriminatory animus based on race and color, [but] the evidence was not sufficient enough to plead in the plaintiffs' original complaint without the opportunity of discovery." They thus seemingly concede that their complaint fails to substantiate cognizable discriminatory animus based on race or color. And the closest they come to articulating a protected "class" is their assertion in their appellate brief that "[a]s citizens of the State of Texas, [Plaintiffs] were and are in a statutorily protected class . . . as defined by Tex. Gov't Code § 552.001(a)," and "were denied public information based on conspiratorial animus." They provide no support—legal or factual—for their conclusory assertion that Texas citizens constitute a protected class for purposes of § 1985(3), nor do they allege any discriminatory animus harbored by the Defendants against Texas citizens. *See Griffin*, 403 U.S. at 102 ("[T]here must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.").

Beyond those deficiencies, as the district court noted, Plaintiffs fail to "allege facts that suggest an agreement among the alleged co-conspirators existed." They point to their allegation that Ranger Dreaden "deliberately skewed his investigative findings of D. Coates' death in favor of [Defendants]. This bias was based on a private relationship between him and . . . Hawthorne. The bias of . . . Dreaden was intended to protect [Defendants] from criminal and civil liability." But taking this version of events as true, Plaintiffs still do not allege any agreement or conspiracy. As

with the other allegations relating to Plaintiffs' § 1985(3) claim, these are "mere conclusory allegations" insufficient to state a claim. *Holdiness v. Stroud*, 808 F.2d 417, 424 (5th Cir. 1987).

## C.

Plaintiffs also contend that the district court erred by dismissing their Fourteenth Amendment due process claim asserted under 42 U.S.C. § 1983 based on Defendants' alleged deliberate indifference to Coates's serious medical condition leading up to his death.[4] The district court, with no additional explanation, summarily determined that Plaintiffs "ha[d] not alleged facts that suggest the defendants demonstrated a deliberate indifference to Coates's medical needs."

"To state a section 1983 claim, 'a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.'" *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (quoting *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008)). "The Fourteenth Amendment guarantees pretrial detainees a right not to have their serious medical needs met with deliberate indifference on the part of the confining officials." *Dyer v. Houston*, 964 F.3d 374, 380 (5th

---

[4] Plaintiffs also make arguments under the Fourth and Eighth Amendments, but these lack merit. Their Eighth Amendment argument is misplaced, as Coates was a pretrial detainee, not a convicted inmate. *Thibodeaux v. Bordelon*, 740 F.2d 329, 334 (5th Cir. 1984); *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996). Their Fourth Amendment argument is that "no 'death' warrant had been duly issued authorizing [Coates's] life to be taken at the hands of the government and, therefore, any defendant claim of exception to the Fourth Amendment is frivolous." They provide no support for this novel theory, and we will therefore not consider this argument further. *See* Fed. R. App. P. 28(a)(8)(A) (stating that an appellant's brief must "contain appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies").

Cir. 2020) (cleaned up). "[A] pretrial detainee's due process rights are said to be 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'" *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996) (quoting *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983)); *see also Rhyne*, 973 F.2d at 391 ("Pre-trial detainees are entitled to a greater degree of medical care than convicted inmates."). "[A] serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Sims v. Griffin*, 35 F.4th 945, 949 (5th Cir. 2022) (quoting *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006)).

Deliberate indifference "cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001). "Rather, the plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). "To succeed on a deliberate-indifference claim, plaintiffs must show that (1) the official was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and (2) the official actually drew that inference." *Id.*

Even assuming *arguendo* that Plaintiffs allege facts showing that Chambers County "official[s] [were] aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]," Plaintiffs' § 1983 claim fails on the second prong of the deliberate-indifference analysis. Their complaint contains no allegation that Meguess, in examining Coates (such as she did), or anyone with the Sheriff's Office had subjectively drawn any inference that Coates was at risk of dying during their interaction with

him.  And there is nothing in the record that supports that anyone at the jail knew that Coates had swallowed baggies of drugs, or that at least one had burst in his stomach.  Without more, and crediting Plaintiffs' allegations that the care Meguess and the deputies provided to Coates was wholly inadequate, Plaintiffs have not stated a viable claim for deliberate indifference.

In a similar case, this court held that a jail nurse's subjective belief that a prisoner was not suffering a medical emergency defeated a deliberate indifference claim.  *Cleveland v. Bell*, 938 F.3d 672, 674 (5th Cir. 2019).  In *Cleveland*, a pretrial detainee suffering from "a host of health problems, including diabetes, high blood pressure, rheumatoid arthritis, and peripheral artery disease," fainted in a bathroom and received emergency medical care for a cut on the back of his head.  *Id.*  He later "defecated on himself and his mattress" and "couldn't get up."  *Id.* at 675.  Rather than bring him his medications, the nurse told him to "stop playing" and that she believed he was "faking" and "trying to get back in the infirmary."  *Id.* at 676.  But he died during the night.  *Id.*  The district court denied the nurse summary judgment on her defense of qualified immunity, based on her deliberate indifference to the detainee's needs.  *Id.* at 675.

On appeal, this court reversed that ruling, concluding the plaintiffs had failed to show that anyone "subjectively 'dr[e]w the inference' that Cleveland was experiencing a life-threatening medical emergency."  *Id.* at 676. (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  As for the nurse's interactions with the prisoner before he died, nothing in the record "suggest[ed] that th[o]se statements reflected anything other than [the nurse's] sincere opinion at the time."  *Id.*

Here, the alleged facts are similar, and the outcome is the same. Meguess, the jail nurse, checked Coates's pulse and blood pressure and

announced to the deputies in Coates's cell that he was "good." Her cursory check and prognosis turned out to be inadequate and wrong. But even assuming the care she and the others provided was grossly negligent or constituted malpractice, nothing in the record suggests that Meguess's pronouncement that Coates was "good" "reflected anything other than her sincere opinion at the time," or that she—or anyone else with the Sheriff's Office—"subjectively dr[e]w the inference" that Coates was experiencing a life-threatening medical emergency. *Id.*; *see also Dyer*, 964 F.3d at 381 ("[T]he decision whether to provide additional treatment 'is a classic example of a matter for medical judgment,' which fails to give rise to a deliberate-indifference claim.") (quoting *Gobert*, 463 F.3d at 346). So, despite the district court's sparse analysis of the issue, the court did not err in dismissing Plaintiffs' § 1983 deliberate indifference claim.

## D.

Plaintiffs ostensibly assert a § 1983 *Monell* claim against Chambers County and the Sheriff's Office.[5] The district court dismissed this claim as inadequately pled. In doing so, the court noted Plaintiffs' own concession that they "cannot properly present facts essential to comprehensively justify" their *Monell* claim without further discovery. *See* Fed. R. Civ. P. 56(d).

To assert a viable *Monell* claim, "a plaintiff must . . . 'demonstrate a dispute of fact as to three elements: that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right.'" *Webb v. Town of Saint Joseph*, 925 F.3d 209, 214

---

[5] Plaintiffs' complaint contains allegations that suggest Plaintiffs attempt to assert failure-to-train and failure-to-discipline theories for sustaining their *Monell* claim. But, as discussed *infra* above the line, they are not sufficiently articulated, and on appeal, Plaintiffs only argue generally that they assert a valid *Monell* claim.

(5th Cir. 2019) (quoting *Davidson v. City of Stafford*, 848 F.3d 384, 395 (5th Cir. 2017)).  Plaintiffs' claim fails right out of the gate because they do not adequately identify any official policy on the part of Chambers County or the Sheriff's Office.

Our caselaw establishes three ways of establishing an "official policy" for the purposes of *Monell* liability. *Id.*  Most straightforwardly, a plaintiff can point to "written policy statements, ordinances, or regulations." *Alvarez v. City of Brownsville*, 904 F.3d 382, 389–90 (5th Cir. 2018).  Or, a plaintiff can show "a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Id.* at 390.  Finally, "even a single decision may constitute municipal policy in 'rare circumstances' when the official or entity possessing 'final policymaking authority' for an action 'performs the specific act that forms the basis of the § 1983 claim.'" *Webb*, 925 F.3d at 214 (quoting *Davidson*, 848 F.3d at 395).

Plaintiffs attempt the second route, alleging a widespread practice on the part of Chambers County and the Sheriff's Office, and they point to three allegations in their complaint to substantiate their assertion.  But none of the allegations are sufficient to sustain a *Monell* claim.

Plaintiffs first allege that the "[S]heriff and elected members of the commissions court failed to properly screen, hire, train, supervise, discipline, or otherwise control the employees of the county and its [S]heriff's [O]ffice with regards to the circumstances surrounding D. Coates' death."  Next, they assert that those failures "were evidenced by the conduct (or lack of conduct) of Sheriff's Office staff that began with the non-law enforcement contact with D. Coates and ultimately ended with his death," and that the Sheriff's Office did not know what to do in an emergency medical situation.  And they aver that "no disciplinary or adverse action was taken against any of the Sheriff's Office staff in connection with the arrest, transport,

confinement, suffering, and death of D. Coates; and, therefore, the policymakers for Chambers County, Texas approved and/or ratified the conduct (or lack of conduct) of the Sheriff's Office staff."

The complaint alleges no specific facts to flesh out these assertions. Nor do Plaintiffs provide any legal support for how these three conclusory allegations amount to a cognizable "official policy"—via a widespread practice—promulgated by any of the Defendants or how the practice was the moving force behind the violation of Coates's constitutional rights. *See Webb*, 925 F.3d at 214. These lapses doom Plaintiffs' *Monell* claim.

Insofar as Plaintiffs allege a failure-to-discipline claim, the result is no different. To do so, they "must show (1) that the city's failure to discipline amounted to deliberate indifference and (2) a causal link between the failure to discipline and the violation of their rights." *Verastique v. City of Dallas*, 106 F.4th 427, 432 (5th Cir. 2024). "So, to survive dismissal, plaintiffs must cite sufficiently numerous prior incidents, each of which includes specific facts that are sufficiently similar to those alleged here." *Id.* Plaintiffs have not even attempted to do so in this case.

To the extent Plaintiffs lodge a failure-to-train claim, they must prove that "1) the [city] failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Thompson*, 245 F.3d at 459. They again make no attempt to support such a claim, either in their complaint or in their briefing on appeal.

Based on the foregoing, the district court did not err in dismissing Plaintiffs' *Monell* claim.

No. 24-40561

### E.

Finally, Plaintiffs contend that the district court erred in denying them additional discovery before the court dismissed their claims.  Plaintiffs sought to forestall dismissal by invoking Federal Rule of Civil Procedure 56(d), which applies in the summary judgment context, even though Defendants motioned for dismissal pursuant to Rules 12(b)(1) and 12(b)(6).  Regardless, the procedural history of the case belies their Rule 56(d) challenge and, if anything, demonstrates that the district court did not abuse its discretion in denying their request for discovery.

The parties filed a joint discovery and case management plan on October 18, 2023, in which they proposed a discovery timeframe ending May 31, 2024.  The district court then set a more generous discovery deadline of June 14, 2024.  Given that the district court did not dismiss the case until May 21, 2024, Plaintiffs thus had six months in which to conduct discovery before their claims were dismissed.  Yet they do not explain why they did not adduce the discovery they requested under Rule 56(d) well before the court's ruling.  Instead, they argue on appeal that the district court should have treated Defendants' motion to dismiss as a motion for summary judgment, and afforded them Rule 56(d) discovery, because "the district court relied on presented matters outside the pleadings which were not excluded by the court."  But they point to nothing in the dismissal order to support this contention.  To the contrary, based on the record before us, nothing outside of the pleadings was presented to the district court, and the court based its Rule 12 dismissal on the pleadings alone.  We discern no abuse of discretion on this issue.

### IV.

The events that unfolded after Deputy Barnes offered Dontriel Coates a "courtesy ride" home led to a tragic end.  But the issues Plaintiffs raise on

14

No. 24-40561

appeal fail to show reversible error in the district court's dismissal of their claims in this case. The TWDA does not allow a wrongful death action against Sheriff Hawthorne, such that dismissal of that claim under Rule 12(b)(1) was proper. And because Plaintiffs did not sufficiently plead claims under 42 U.S.C. § 1985(3) or § 1983, the district court did not err in dismissing those claims pursuant to Rule 12(b)(6). Finally, the district court did not abuse its discretion in declining to allow Rule 56(d) discovery after Plaintiffs failed to avail themselves of the six-month discovery period that lapsed before the court dismissed their claims.

AFFIRMED.

Carl E. Stewart, *Circuit Judge*, concurring in part and dissenting in part:

Dontriel Coates was in the custody of the Chambers County Sheriff's Office when he began seizing and groaning in pain. After a check of his vital signs, a jail nurse declared him "good" and left him in his cell without any further examination or care. Several hours later, jail personnel returned to Coates's cell where they found him deceased.

I agree with the panel majority's decision to affirm the district court's dismissal of Coates's claims pursuant to 42 U.S.C. § 1983 for violations of the Fourth and Eighth Amendments, 42 U.S.C. § 1985(3), and state law. I also agree with the panel majority that the district court did not err in declining to allow Rule 56(d) discovery. However, I would reverse the district court's dismissal of Coates's due process claim pursuant to § 1983 based on Appellees' deliberate indifference to Coates's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

## I

On the morning of July 14, 2021, a law enforcement officer offered Coates a non-custodial "courtesy ride," which later transformed into a custodial ride. Unbeknownst to the officer, at some point during that ride, Coates swallowed two plastic bags of illegal drugs. Also unbeknownst to the officer and other jail personnel, after arriving at the jail, at least one of the bags burst in Coates's stomach.

While sitting on a toilet in his jail holding cell, Coates began to "grunt loudly in pain" and then went "into a body seizure." In response to other inmates' cries for help, jail personnel entered Coates's cell and moved him to a seated position against his cell wall. Coates continued to "grunt in seizure." The jail nurse, Rhonda Meguess, checked Coates's pulse and blood pressure. She announced that Coates was "good." Then, Meguess and other

jail personnel left the cell, with Coates still seated on the floor, leaning against the wall where they propped him. No further medical examination was conducted and no treatment was administered. Several minutes after jail personnel left Coates's cell, he died. When other inmates believed that Coates had died, they called for help, but none arrived. Only hours later did jail personnel return to Coates's cell to find him deceased.

Coates's estate and surviving decedents (collectively "Coates") brought claims against Chambers County, the Chambers County Sheriff's Office, and the Chambers County Sheriff Brian Hawthorne (collectively "Chambers County"). The complaint names several other individuals, including Meguess and the law enforcement officers who made contact with Coates, alleging that they were acting on behalf of Chambers County during the incidents. Coates filed claims pursuant to 42 U.S.C. § 1983 for violations of the Fourth and Eighth Amendments, 42 U.S.C. § 1985(3), and state law. The district court dismissed their state law claims for lack of subject matter jurisdiction and dismissed their federal law claims for failure to state a claim.

## II

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). In evaluating a Rule 12(b)(6) motion, a court must accept all non-conclusory factual allegations in the complaint as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and draw all inferences in favor of the nonmoving party. *Kelson v. Clark*, 1 F.4th 411, 416 (5th Cir. 2021).

## III

I disagree with the panel majority's holding that Coates's claim of deliberate indifference to his serious medical needs warrants dismissal. The

17

panel majority admits that the district court's analysis of this issue was "sparse." Op. 11. Indeed, the district court's analysis of this claim is limited to just one paragraph, concluding without any further discussion that Coates did not plead sufficient facts to demonstrate deliberate indifference to his serious medical needs. The panel majority concludes that despite that limited analysis, dismissal of Coates's claim is warranted because Meguess did not draw a subjective inference that Coates was "experiencing a life-threatening medical emergency." Op. 11. In so reasoning, the panel majority relies on *Cleveland v. Bell*, 938 F.3d 672 (5th Cir. 2019), but *Bell*'s holding does not dictate dismissal here.

In *Bell*, inmate Paul Cleveland was treated for a cut on the back of his head, which he sustained from a fall caused by dizziness and nausea. *Id.* at 674. Later that day, Cleveland told the nurse he was too weak to get up and retrieve his pills. He defecated on himself during the night, and was ultimately found deceased. *Id.* at 674–75. The court held that the nurse was entitled to summary judgment on the plaintiff's claim that she was deliberately indifferent to Cleveland's serious medical needs. *Id.* at 677. The panel there observed that the nurse made statements "indicating that she thought there was nothing wrong with [the inmate] and believed he was faking illness." *Id.* at 676. Nothing in the record "suggest[ed] that th[ose] statements reflected anything other than her sincere opinion at the time." *Id.*

*Bell* is distinguishable from the instant case. Here, Coates alleges facts that strongly indicate that any statements that he was "good" when he was seen and left by jail personnel were patently unreasonable or untrue. To the contrary, in *Bell*, Cleveland demonstrated less severe symptoms that led the nurse to believe he was faking his illness. *See* 938 F.3d at 676.

Taking Coates's allegations as true—which we must at the Rule 12(b)(6) stage—Coates plausibly alleges facts to demonstrate that jail

18

personnel drew a reasonable inference that he was experiencing a life-threatening emergency. Unlike the inmate in *Bell*, Coates demonstrated "signs of acute distress." *Cf. id.* at 674. While the *Bell* inmate did demonstrate symptoms of illness, those symptoms did not rise to the level of Coates's ongoing full body seizure and grunts of pain in this case. In response to Coates's ongoing seizure and grunting, jail personnel merely checked his pulse and blood pressure, declared him "good," and left him propped up on the floor of his cell. I disagree with the majority's conclusion that there are no facts to demonstrate that Meguess's pronouncement that Coates was "good" reflected something other than her sincere belief at that time. Meguess was more than a mere bystander, but indeed a trained medical professional. *See* Op. 11. I would hold that Meguess and other jail personnel had sufficient facts and ample reason to believe that Coates was not in fact "good," and, at a minimum, warranted further examination or treatment. Because of the inherently threshold nature of Rule 12(b)(6) scrutiny, Coates alleges sufficient facts to warrant moving forward to the next stage in the proceeding.

My conclusion is based on other cases previously decided by this court involving inmates with more alarming symptoms and acute signs of distress, which bear closer resemblance to the facts alleged here. For example, in *Kelson*, 1 F.4th at 418, this court reversed dismissal of the plaintiff's claim of deliberate indifference to serious medical needs where paramedics failed to provide any substantive care to a patient who said that he sustained a head injury and had "patently visible blood and contusions." *Id.* at 414 (cleaned up). The panel there held that the complete failure to provide treatment exceeded mere negligence. *Id.* at 418. The panel further rejected the defendants' claims that they could not have reasonably known about nor treated the patient's internal bleeding, reasoning that this circuit has "emphasized that an 'official's knowledge of a substantial risk of harm may

be inferred if the risk was obvious.'" *Id.* at 419 (quoting *Easter v. Powell*, 467 F.3d 459, 463–64 (5th Cir. 2006)).

In *Ford v. Anderson County*, 102 F.4th 292, 303 (5th Cir. 2024), Rhonda Newsome experienced an Addisonian crisis, consisting of right flank pain, vomiting, and loud groans of pain throughout the night. An initial checkup indicated that Newsome's vital signs were good. *Id.* at 303. Jail staff checked on Newsome a total of thirty-one times between the time her crisis started and her death. *Id.* At some point, blood test results came back indicating that Newsome was in medical crisis, but no action was taken. *Id.* at 304. Several hours later, jail personnel had to assist Newsome to the toilet where she was soon thereafter found unresponsive. *Id.* at 305. This court held that although the defendants there "lacked the benefit of hindsight when they assisted Newsome . . . the fact that Newsome would be found unresponsive thirty minutes later raise[d] factual issues regarding what kind of condition Newsome was in at th[at] time."[6] *Id.* at 315; *see also Austin v. Johnson*, 328 F.3d 204, 210 (5th Cir. 2003) (holding that the plaintiffs pled sufficient facts to state a claim of deliberate indifference because "failure to call an ambulance for almost two hours while [the juvenile laid] unconscious and vomiting rises to the level of deliberate indifference").

The same is true here. Upon observing Coates's seizures and grunts of pain, Chambers County failed to provide any medical care. Unlike the nurse in *Bell*, there are no statements or other facts to indicate that Meguess drew the conclusion that Coates was faking his illness. She simply found that his pulse and blood pressure rendered him "good." And whereas jail

---

[6] *Ford* was before this court on appeal of the district court's grant of summary judgment. *Ford v. Anderson Cnty.*, 102 F.4th 292, 301 (5th Cir. 2024). However, it remains probative. If the facts in *Ford* were sufficient to warrant a trial on the merits, the facts alleged here are also enough to state a plausible claim for relief.

20

personnel in *Ford* checked on the inmate over thirty times after she started displaying concerning symptoms (even after her initial vital signs came back stable), nobody returned to Coates's cell to check on or monitor his condition. *See Ford*, 102 F.4th at 303. Even after observing Coates's alarming symptoms—and despite the other inmates' cries for help—nobody returned to his cell for hours.

It is true that "[d]eliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001). But that does not mean it is impossible to meet. Coates alleges that jail personnel observed his complaints, groans, and alarming symptoms, but failed to provide any examination or treatment other than a quick check of his pulse and blood pressure. *See id.* (holding that deliberate indifference exists where a plaintiff can "show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct"). Although Meguess and other jail personnel "lacked the benefit of hindsight," that Coates was found dead in his cell hours later "raises factual issues regarding what kind of condition [Coates] was in" when they left him. *Ford*, 102 F.4th at 315. Meguess and other jail personnel's complete inaction after observing Coates's alarming symptoms supports his claim that Chambers County "may have been both subjectively aware of, and disregarded, [his] serious risk of injury." *Kelson*, 1 F.4th at 420.

In sum, on the facts of Coates's well-pleaded complaint, he plausibly alleges that Chambers County's conduct rose to the level of deliberate indifference to his serious medical needs. Particularly in light of the fact that this appeal arises out of dismissal at the Rule 12(b)(6) stage, I would reverse the district court's dismissal of Coates's § 1983 claim based on Chambers County's deliberate indifference to his serious medical needs.

## IV

For the foregoing reasons, I respectfully dissent.